*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-1088**

State of Minnesota,
Respondent,

vs.

Miranda Catherine Johnson,
Appellant.

**Filed April 13, 2015
Affirmed
Harten, Judge\***

Ramsey County District Court
File Nos. 62-CR-13-4923, 62-CR-13-6814

Lori Swanson, Attorney General, St. Paul, Minnesota; and

John J. Choi, Ramsey County Attorney, Peter R. Marker, Assistant County Attorney, St. Paul, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Veronica Surges Shacka, Assistant Public Defender, St. Paul, Minnesota (for appellant)

        Considered and decided by Peterson, Presiding Judge; Worke, Judge; and Harten, Judge.

_____

\* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

UNPUBLISHED OPINION

**HARTEN**, Judge

Appellant challenges her sentences, 21 months in prison for a July 2013 second-degree assault and a concurrent 110 months in prison for a September 2013 first-degree assault, arguing that the district court abused its discretion in denying her motion for a downward dispositional departure. Because we see no abuse of discretion in the sentencing, we affirm.

## FACTS

In July 2013, S.P., then five months pregnant, was pushed, stabbed, and kicked in the stomach by appellant Miranda Johnson, the sister of S.P.'s boyfriend, R.J. Appellant pleaded guilty to second-degree assault, for which her presumptive sentence, with her criminal history score of zero, was 21 months in prison; the plea agreement provided for a stay of execution and a 120-day cap on workhouse time.

In September 2013, before appellant had been sentenced for the July assault, she used a knife to sever the carotid artery of her brother J.J., who underwent emergency surgery and survived. Appellant was charged with first-degree and second-degree assault. She pleaded guilty to the first-degree assault charge with the provisions that: (1) the second-degree assault charge would be dismissed; (2) her criminal history score was now two and she would receive a middle-of-the-box guideline sentence of 110 months in prison; (3) the sentences, which could be consecutive, would be concurrent; and (4) she could request a dispositional departure.

At the sentencing hearing, appellant's attorney recommended that, after a year at the workhouse, appellant receive a dispositional departure and go to the Tubman Shelter in the Breaking Free program for 18 months, where her four-year-old son could stay with her and she would receive counseling. Because appellant had violated the plea agreement for the July assault by committing the September assault, the district court was not bound by the July plea agreement, and she was sentenced to 21 months, executed. On the September assault, she was sentenced to a concurrent 110 months, executed. The district court noted that appellant had "grown up essentially surrounded by violence and other extreme difficulties and that those have had an impact" and said it would "take [appellant's] word that [she was] ready to try and change all that." The district court also told appellant:

> [Y]ou came as close as you can basically to killing somebody without actually a view of that objective . . . .
> . . . The programming that has been identified to me by the defense is some of the best in the country, unquestionably, and could well be beneficial. But I . . . frankly would have a concern for others in programming while you're going through it. Not to mention the fact that you would be back out and likely dealing with all of the difficulties that the environment that led to these offenses pose. . . . I think that this is a case where public safety simply requires a longer sentence than a downward [dispositional] departure would allow.

Appellant's attorney then requested a downward durational departure from 110 months to 36 months; the district court also denied this proposal.

Appellant now claims that the district court abused its discretion by declining to depart from the guideline sentence.

3

**D E C I S I O N**

"This court will not generally review a district court's exercise of its discretion to sentence a defendant when the sentence imposed is within the presumptive guidelines range." *State v. Delk*, 781 N.W.2d 426, 428 (Minn. App. 2010), *review denied* (Minn. 20 July 2010). Review of the district court's decision on whether to depart, based on identified and proper grounds, is "extremely deferential." *Dillon v. State*, 781 N.W.2d 588, 595-96 (Minn. App. 2010), *review denied* (Minn. 20 July 2010). Only in a "rare" case will an appellate court reverse a sentencing court's refusal to depart. *State v. Kindem*, 313 N.W.2d 6, 7 (Minn. 1981); *see also State v. Soto*, 855 N.W.2d 303, 306 (Minn. 2014) (finding that defendant presented such a "rare" case and agreeing with this court that "the district court abused its discretion when it stayed [appellant's] sentence").

"Factors relevant to dispositional departures . . . include amenability to probation . . . [and] the defendant's age, prior record, remorse, cooperation, attitude while in court, and the support of friends and/or family." *State v. Abrahamson*, 758 N.W.2d 332, 337 (Minn. App. 2008) (citations omitted), *review denied* (Minn. 31 Mar. 2009). "[But] the presence of factors supporting departure does not require departure." *Id.* Appellant argues that all these factors favor a dispositional departure, but the record refutes that argument.

First, appellant claims that her "age [21 at the time of the first offense; 22 at the time of the second] and lack of criminal record . . . weigh in favor of a departure." But in 2010, appellant, then 19, was charged with disorderly conduct after hitting and biting her mother, who was concerned that appellant was not caring for her infant son because she

4

was intoxicated and would not give the baby to appellant. In 2013, appellant committed first-degree assault while on conditional release and awaiting sentencing for second-degree assault. These facts would not favor probation.

Appellant also argues that her "remorse, attitude in court, and cooperation . . . weigh in favor of a departure." But at the sentencing hearing, appellant referred to severing her brother's carotid artery with a knife as "[a] wrong choice I made"; she claimed to have "blacked out" while stabbing him, implying that she was not responsible for the stabbing; and she denied having a problem with anger management, although she said both assaults occurred because she was angry. Appellant did not show significant remorse for inflicting a very serious injury on her brother.

As to her support network and amenability to treatment, appellant claims that she could develop a support network and receive appropriate treatment in the Breaking Free program, but will not be able to do so in prison. But even if that and appellant's statements on the other factors were true, those factors would not mandate a departure from the presumptive sentence: whether to depart is within the district court's considerable discretion. *See Dillon*, 781 N.W.2d at 595-96.

Appellant objects to the district court's expression of "concern for others in programming while [she is] going through it" because she committed assaults only against family members "who had directly or indirectly traumatized her for her entire life." But appellant's July 2013 assault was against her brother's girlfriend, and there is no evidence that the girlfriend had ever "directly or indirectly traumatized" appellant. Appellant's second assault was committed while she was waiting to be placed on

probation for her first assault. The district court's concern for others who would be living with appellant in a treatment program was appropriate. Moreover, the district court's observation that appellant had "grown up essentially surrounded by violence and other extreme difficulties and that those have had an impact" demonstrates that the district court "carefully evaluated all the testimony and information presented before making a determination" as to appellant's sentence. *See State v. Van Ruler*, 378 N.W.2d 77, 80-81 (Minn. App. 1985) (noting that a district court is not obliged to give explanation for its decision not to depart from the presumptive sentence and that a reviewing court may not interfere with that decision if the record reflects that the district court considered the testimony and information presented before making its decision).

The district court did not abuse its discretion by imposing the guideline sentence on appellant.

**Affirmed.**